Is it good to be back in the courtroom? It is. I need to take this off. There's another one in here. Excuse me, Your Honor. I know we can't engage in customary pleasantries, but... Pleasure. We're in no rush, Mr. Carpenter, but good to have you back. Whenever you're ready, we'd be happy to hear from you. Thank you, Judge Richardson. It may please the court. Detective McKinney admitted that when he arrested Mr. Daniels in this case, he did not have a legal basis to search the car. So he testified that he and the officers devised a plan to develop what he described as CYA for a search. We are asking this court to hold that the officers' plan, which included unmerandized questioning of Mr. Daniels and providing misleading information to Enterprise, ran afoul of the Fourth Amendment. Mr. Carpenter, I hate to interrupt you this early. That's okay. I always look forward to your arguments, but there's one question I think I need to get cleared up for my way of thinking. When I start looking at search and seizure questions, the first thing I look at is whether or not the petitioner has established standing. And I don't see any testimony or evidence in this case to establish standing. So how would you have me deal with that problem? Sure. That's a problem for me, maybe not for you, but would be a problem for me. Well, it would be a problem for me if you viewed the case that way. First of all, I'll acknowledge you're correct. There is no testimony to establish that he had permission from the driver of the car, the authorized driver on the rental contract. We acknowledge that. What we do have, however, and the reason we think we've met our burden to establish the reasonable expectation in this case, is an undisputed factual proffer that was made from the beginning of this case and that formed the basis for the two or so years of litigation in the case. So if you look at joint appendix page 17 and 18, Mr. Daniels, through his attorney, proffered in his initial motion to suppress that he was, quote, driving the vehicle with his friend's permission. And then if you look at the footnote on page 18, he further asserted that he was doing that he had common authority based on the driver's permission over the vehicle and its contents. Those factual assertions were never disputed throughout the entirety of the proceedings below. So the district court relied on those factual assertions at joint appendix page 61 in the court order, which noted Mr. Daniels' assertion that he was driving with permission. And then if you look at joint appendix page 15 and 16, which after Byrd came out, let me back up, after Byrd the parties agreed that further proceedings were needed because the rule from Wellands had been overturned. We reasserted the same positions, and at joint appendix page 115 to 116, the government in its response argued only abandonment with respect to the reasonable expectation of privacy inquiry. They did not assert or contest the factual proffers that were made that he had lawful permission from the driver of the vehicle. They said only that disclaiming ownership abandoned, quote, any expectation of privacy that may have otherwise been recognizable under Byrd. In other words, they acknowledge in their filing he had the initial Byrd reasonable expectation. That's not acknowledging that it's there. I'm curious about that. This is sort of an interesting point. I mean, have we ever held that you can rely on an attorney proffer to establish standing? I mean, the whole sort of premise of these is that you've got the factual burden to do it, and it would be really helpful, I suspect. I mean, you know this well as a defense lawyer to be able to say, Judge, we don't want our guy to testify in this suppression hearing. I'm just going to proffer that these are the facts. I mean, oftentimes I think defense lawyers would like to do that, and that might be appropriate. But wouldn't you have to actually have a stipulation to do that? So, Your Honor, I agree. I don't know of a case that this court has about proffers in that context. I think the rule it does fall under, however, is the rule that this court will not consider in the first instance arguments that were not made by the parties below. And here the government below did not make either a factual or a legal argument on this point. Again, maybe it did not concede, but it at the very least assumed that he had the original expectation and said that it didn't matter based on the disclaimer. And I would point out that if the court allows the government to win this case on that issue, it creates what I would view as a very serious risk of sandbagging for gamesmanship. And while that may benefit the government in this case, as a defense lawyer there will be cases in the future where it would benefit us because, as the court well knows, it is fairly common practice in district court for proffers to be made by attorneys at suppression hearings, at sentencing hearings, where the facts at issue aren't in question, aren't disputed. And it saves the court from – it streamlines the process. It saves the court from needing testimony from case agents or particular witnesses. I mean there would be a difference in the sentencing. I mean I think you could separate the sentencing context where we often use proffers. The attorney stands up and talks about the guy's family without requiring testimony. I don't think you would have to go so far as to say you can't use a factual proffer in sentencing where we have much more relaxed standards. But the Supreme Court, when it sort of established this rule that you can testify at the suppression hearing and that evidence can't be used against you at trial, sort of seems to rely on the need to actually put evidence on it. Mr. Superior Honor, again, if the court views it that way, I concede that we lose at the threshold. I don't think it's a good rule for the court to establish because of the risk that it creates for sandbagging in a case like this one. And I would point out, again, this was an undisputed factual proffer that was made in the initial motion in November of 2017. The hearing in this case was two years later. So for two years the case proceeded through an initial motion, a response, an initial order, a motion to reconsider, and a response to that in the hearing. At no point was this fact ever disputed. And had it been, it would have been very easy to put on testimony. You wouldn't even have had to worry about the defendant's own rights about testimony here. You could have simply put in testimony from the driver, the authorized driver on the rental contract. It would have been a very simple problem to solve. It streamlined the hearing to not have to have that additional witness testimony. And I think it would be improper to allow the government nearly four years later when it filed its response brief in this case in August of 2021 to raise an issue that the parties had not disputed in the nearly four years of litigation preceding it. So I do think it falls under the basic rule that where the argument is not made below, it should not be considered by this court on appeal. And I don't have JA-61 before us, but your representation is that that is where the court found that he effectively was a permissive user of the vehicle? Correct. So this was the pre-Bird decision. It's a two-page order, and it says here, according to the defendant's motion, he was using the rental car with permission from its authorized driver. However, he is not alleged that he was listed. Then it goes on to say under Wellens, those factual allegations don't state a reasonable expectation. So that's the pre-Bird question, in which case the proffer didn't matter then because it wasn't sufficient. Under the existing law at the time, right. I mean, this case was briefed. Is there anything post-Bird from the district court that suggests to us that he was a permissive user? Because you might imagine if the court made the finding, maybe that would make a difference. Not sure. So there is not a specific ruling on it. Though if you look at the ruling that the district court did make, it was premised on the assumption. It never, again, never challenged the factual proffer. That's why the analysis of the disclaimer was important because everybody was operating on the assumption that he had the reasonable expectation under Bird, but that it was disclaimed as a result of the un-Mirandi statements. But no, I acknowledge there's no specific ruling. Can I ask a different question? And I don't mean this as a gotcha, and I'm happy for you to just say I don't know the answer to that question. But on the, you know, there's sort of a gauntlet you've got to go through. But it's assumed for a minute that you've established a Miranda violation. And the question is whether it, you know, renders or excludes the statement from a pretrial proceeding. We issued a decision in 2005 called Burrell v. Virginia where the – are you familiar with this? I figured you would be. I've never managed to surprise you before. I didn't think today would be the day. And so we conclude there, based on a reading of Chavez that may or may not be exactly the way you have to read Chavez, that the Fifth Amendment claim failed because he does not allege any trial action that violated his Fifth Amendment rights. Why doesn't that right or wrong bind this panel on the question of whether loosely the exclusionary rule doesn't apply to pretrial hearings? Sure. So I think the reason it doesn't is that when the court used the trial action in that case, if you look at that language, if you look at the broader context of Burrell in the other language, it makes clear what the court is talking about there is the, quote, courtroom use that was talked about in Chavez. So in particular, if you look at footnote four in the Burrell decision, it says, unlike – it says that in oral argument Burrell's counsel affirmed to the court's question that Burrell only claims that his constitutional rights were violated at the time the summonses were issued, not at the time of the trial. So he – there was no allegation in Burrell that they were used at any other point in the proceedings. So I think trial action was used there kind of as shorthand for what the Chavez court described as courtroom use. All right, so that's a – well, so that's one way of saying the court need not have relied. It could have had a narrower rule, right? But it announced the rule as trial. And it's hard for me – you know, I'm bound by this in the same way that you are. And it's hard – it's a little hard for me to get my head around how I can read that trial, as you suggest, to say trial and pretrial proceedings, right? I mean, you know, Judge – I believe it was Ludig that was writing it. You know, those were the words that he chose. It is maybe a rule that you don't like, but it's still the rule that he announced as the rationale for the decision. That's true. He uses the phrase trial right. I just – I don't think it's a binding holding on the distinction of trial right versus courtroom use as the governing question because that issue wasn't raised or briefed in the case. So I think that the – I just don't think it was an issue that needed to be decided or that was decided. I acknowledge the language is there. I just don't think when you read the full context, it walks through the two different rationales in Chavez and then quotes trial action. But I don't read that as definitively resolving an unresolved, unbriefed question that was – So then what do we do then in Nichols where the court comes back and says – it sort of talks about it.  But in Nichols where it says the exclusion from the government's case in chief at trial will provide adequate deterrence, right? It's sort of that by itself might not be sufficient, but that's exactly what Burrell is telling us, right? Again, it's back to this idea of the trial and there even more narrowly the case in chief at trial because of the possibility to use in cross-examination that we know about. When I read that, doesn't that support the sort of natural reading of the word trial in Burrell v. Virginia? I don't think it does because I think what Nichols is telling us is that when you're outside of the case in chief at trial, then we apply this balancing test and decide whether deterrence is needed in the particular scenario. So in Nichols it wasn't because there was already a deterrent effect created. Right, but the conclusion that is made in Nichols – and I get they balance lots of things. But the conclusion is that it's enough to exclude it from the case in chief at trial because that provides ample deterrence. I mean that's sort of – they do this balancing, but that's sort of the conclusion. Ergo, it's okay at sentencing. Or I'm sorry, it's not a – yes, it's okay at sentencing to use the Fifth Amendment material. Right, but I think that it's still a context-specific balancing in that case. It is excluding it from sentencing necessary where there is a deterrent effect created by the exclusion from the case in chief. And that's what distinguishes our case because here there is no deterrent effect at all if these statements are merely excluded from the case in chief. And that's because the purpose, the primary purpose of these statements is to establish the validity of a search under the Fourth Amendment. That issue is one of them. They also could have been introduced at trial to show ownership of the gun. I mean imagine, for example, that the DNA didn't come back, right? So the DNA didn't come back. Do we think they would have used those statements about the car? I mean they were inculpatory statements independent of the abandonment issue, no? I acknowledge that could have been a secondary use of them if the DNA evidence weren't there. But I still think the primary purpose, and that's how they were used in this case. And we know also from Detective McKinney's own testimony that's his intent for how to use them from the beginning is that he was doing the questioning. His intent doesn't really matter, right? That is true, but I think his intent is relevant when the primary question we're asking here is, is there a need for deterrence? And I think in that scenario intent is relevant because it shows us that police officers will, if they are allowed to do so, will use unmerandized questioning to justify Fourth Amendment searches. That's why we think there is a need for deterrence here to protect against that. And so that's the reason we think this is a different case than the Nichols or Burrell. Thank you. I realize my time is running short, so I'd be happy to answer questions about the other issues in the case. Our position is that first on the Miranda issue, as we said, we think the government can't rely on those statements. Second, we think that Enterprise's actions here don't provide valid consent because they arose from police deception as to the true nature of the situation here. And third, we think that the inevitable discovery doctrine doesn't apply because if Enterprise had been informed of the full facts, they would not have repossessed the car when they did. I'm happy to answer other questions. If not, I will be back for rebuttal. Thank you, Mr. Carpenter. Mr. Enright, good to have you back, and we'll hear from you whenever you're ready. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. It's just easier to hear you. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. The district court properly denied date. Can you hear us? I can now, yes. Thank you. All right. Thank you. Mr. Enright, we're happy to hear from you. Thank you, Your Honor. The district court properly denied Daniel's motion to suppress for essentially three categories of reasons, and I think the first one is one you discussed earlier, which is standing. The defendant did proffer that he, in his papers, that he had possession of the rental car with permission from the renter, who was Erica Baldwin, and our response to that was not, okay, that's fine, then we don't need to have a hearing on it. Our response on page 115 of the joint appendix, which I believe counsel referred to, was a defendant must submit persuasive evidence of a privacy interest in a vehicle to have standing to assert a Fourth Amendment challenge to assert procedure of the vehicle. In other words, you have to present evidence of it. Was that pre- or post-Berg, 115? This particular paper was post-Berg, but we took the same position both times, which is that's fine. I don't think we – we didn't expect that they wouldn't call Erica Baldwin or present this evidence, but we indeed put them on notice they needed to present that evidence. And at any point – so I understand that point, but Fourth Amendment standing is not jurisdictional, right? And so is there anywhere – and I didn't really see it below, but I want to hear from you what the best place is – that you contested that permissive possessory interest, right? Because there was some testimony that he had a possessory interest, right? Because you all saw him driving around with it, right? That's part of the reason you asked him the question about where it was or whether it was his. And by you, obviously I refer to your colleagues. But is there anywhere where you argue that the defendant failed to put forward the persuasive evidence that his possessory interest, which was established, was permissive? No, Your Honor. I'm relying on the doctrine that this court can affirm on any ground fairly supported by the record. Now that's not a rule that's defense or government specific. It's appellee specific. This court can affirm on any ground fairly supported by the record, and the defense would, of course, be able to take advantage of that rule if they were the ones – if we were the ones challenging the court's ruling. And it, I think, is an important rule because here we don't just have the lack of evidence. The defendant took the position in his papers throughout the whole time that Mr. Daniels had possession of the car. He had a possessory interest in the car while he was sitting in that hotel room, and that's why he had it standing. And then at the hearing, he decided to do a 180 and say not only did he not have possession but that it was deceptive for the police officer to even suggest as much to Ms. Ziteroff. Mr. Enright, Mr. Enright, here I am over here. Certainly, Your Honor. Mr. Carpenter makes a very good point that he – or at least he implies that he might have been sandbagged, that when this hearing started he had made the representation or the representation had been made through counsel as to what constituted the reasonable expectation of privacy, where your standing came from. And the government doesn't say anything, doesn't do anything, doesn't object to going forward. You just go on and call your first witness. Now, how can you now complain that he didn't establish standing when you really made little to no effort to require him to do so? I disagree, honestly, with the factual premise, Your Honor. We did say in our response on page 115 of the joint appendix the defendant has to present persuasive evidence of that. Now, we didn't believe that. Well, I understand that. But you just buried a sentence in the middle of a long brief. I'm talking about you get in the courtroom, you're ready to go, your witnesses are there, and you say to the judge, Judge, I don't have to put up one witness until he's put up a witness establishing standing. But instead you don't do that. You just acquiesce. I don't know if it was you or not, to tell you the truth, Mr. Enright, but the fact is that this problem was not called to the district judge's attention as far as requiring testimony from the defendant. That I think is true, Your Honor. And I don't – we should have raised this issue probably, Your Honor. I don't think we're required to for this court to affirm, but obviously that's a discretionary call. What I will notice, and I don't know that I have an excuse for it, but I do have an explanation, which is that we were very surprised. We thought the defense would call Erica Baldwin to establish lawful possession. Instead he changed his position. He said the exact opposite of what he said in his briefs, which is there's no possession. Possession was unlawful, or there was no possession at all. And the officers, when they said that Daniels was in possession, that was actually deceptive. So we weren't expecting there to be any dispute about possession. We weren't expecting that, and that was something that the defendant introduced. So I think if there was any sandbagging, it probably went in that direction. But I don't want to belabor that point because there's other issues we did discuss. On this expectation, I've sort of thought about the expectation of privacy in sort of two different time points. One is when he's arrested, sort of at that moment, and that's the one that doesn't seem like there was a lot of discussion below about. But there does seem to be discussion about whether any expectation of privacy that he did have at that moment continued after the tow. And so that question of whether his expectation of privacy existed once towed, that issue was argued and debated significantly below. Yes, Your Honor, absolutely. And I think there's two reasons it wasn't there. To the extent there was an expectation of privacy before the towing, it was gone after the towing for two reasons. The first is we had undisputed testimony that the rental car contract expired and the rental car company repossessed the car. The expectation of privacy is accompanied by a right or ordinarily what attends it is the right to exclude. Obviously, his right to exclude other people from that car to the extent he had any before was gone after Enterprise took its car back. And the second one is his own abandonment, which nobody contests. It had the effect of abandonment if it were admissible. His statement that, well, I don't know anything about that Dodge Charger. And for two reasons. Can I ask a slightly different version of that? And I understand that. The idea was whatever possession he had is now sort of extinguished, and there are two different reasons for doing so. If we rely on the attorney's proffer for this idea that he had a permissive possessory interest, looking at J.A. 1718, which your counsel pointed to, can we also rely on that for the suggestion that the falsity of his possessory interest to Enterprise was not in fact false? Absolutely, Your Honor. The defendant cannot say that it was false for Mr. Kipp to say that Daniels was in possession of this car, while also saying that he was in fact in lawful possession of the car and resting in it. It has to be one or the other. And if that proffer is something the court was entitled to accept, then obviously it settles the possession issue. And that is dispositive of this appeal because there's no dispute that she gave consent, and that consent was a valid basis for allowing the search. And the only basis for challenging that is the idea that it was somehow deceptive. And that's a far cry from the standard, which is voluntariness. There's no possibility that that statement undermined the voluntariness of the consent, both because it was clearly not deceptive. Ziteroff testified. What did he was in possession mean to you? She testified, I understood that to mean they placed him driving the vehicle. That's exactly what they did. They placed him driving the vehicle not 10, 12 hours before. And that's what she said she cared about. Well, was he an unauthorized driver and was he driving the vehicle? There was no deception there. There was certainly no coercion or anything that undermined the voluntariness of Ziteroff's consent. But perhaps more basically, the officers didn't get their consent from Ziteroff. They got it from Chris and another Enterprise employee who consented after they saw a firearm. So I think that issue, independently of any Miranda issue, independently of any standing issue, supports affirmance of the decision to deny the motion to suppress. Don't feel any obligation to if you've not reviewed it. I'm not asking you to make things up. But if you've read Burl in Virginia and wanted to comment on it, I'd be happy to hear your take on it. You heard our discussion with your colleague. Certainly, Your Honor. I am familiar with that case, and I do believe the court did say a trial right. It's used that term in other contexts, too, in the Riley decision more recently. And that's meaningful because, as the court said in ELSTAT, where the Miranda presumption, and it's a prophylactic presumption, is irrebuttable, where that attaches is in your case-in-chief at trial. And that goes right to the heart of the issue because Miranda is designed to deter custodial interrogation, which means words or conduct reasonably likely to elicit an incriminating response. Well, where is an incriminating response going to be useful? It's going to be useful at your case-in-chief at trial. Well, I mean, it's also useful in lots of other circumstances, right? Like getting search warrants or maybe going to the grand jury and getting an indictment or maybe at a suppression hearing or maybe at sentencing. I mean, it's used. I mean, we all know that it is used in lots of other places. The question is, you know, we might say, is there sufficient deterrence from the case-in-trial? But it's not that it's not useful elsewhere, right? I'm not saying it's not useful, Your Honor, but I'm saying it is a big deterrent effect to say that your incriminating statements you've elicited can't be used to prove the guilt of the person at trial. And what this court said in what I think the Supreme Court has said in several cases, but what this court said in Nichols is that's ordinarily going to do the trick. And the case at issue, of course, was a sentencing. And even more so, I think that's applicable to a suppression hearing because a suppression hearing is ordinarily, at least a Fourth Amendment suppression hearing, where the issue, what's being suppressed is ordinarily going to be reliable physical evidence. There's no concern that you're suppressing a statement that might be incorrect because of coercive pressure. You're suppressing reliable physical evidence. And there the cost of suppressing that evidence is really high because it's really reliable evidence that the jury should ordinarily be able to see. And the incremental deterrent value, that is the deterrent value of suppressing it beyond excluding it from the case in chief, is really low. It's no greater than it is certainly at a sentencing hearing. So to the extent you get to the balancing test, I think that balance under Nichols clearly comes out in favor of not extending the Miranda Rule to the suppression hearing. But I don't think this court needs to go that far because, A, I think we have the Patain decision which holds that you don't suppress reliable physical evidence in order to deter Miranda interrogation. And I don't think you have a Miranda violation here because a statement when you know the person's been driving a car, hey, what about that car, is not reasonably likely to elicit an incriminating response. The officer testified he had a hunch maybe there was something in there, but this court held in Johnson, the possibility that it might be incriminating isn't enough. And, in fact, Johnson gave us an example. There are some questions that don't have that effect, and an example it gave was, hey, is that the hotel you're staying at? Very much on all fours. Do we really think about whether it's incriminating as the inquiry? Because the reason I worry about that is, like, imagine the scenario where I happen to know, based on witness testimony, that a Mr. Enright who works in the U.S. Attorney's Office has committed this crime. And so you're going and somebody shows up and arrests you based on their belief that you're Mr. Enright, and I come up to you and I say, what's your name? I know that that is incriminating because I know that Mr. Enright is the one who has committed the crime. So that might well be designed and will provide incriminating information, but we have not thought traditionally of the name, for example, as being something requiring Miranda warnings. But it's not because it's not incriminating or might not be incriminating. That's correct. It's because it's somehow ministerial in nature. Yes, Your Honor, and there is a separate category of information, which is generally routine booking questions like that, that basically Miranda doesn't get into, even if it is, for example, like an identity theft case where, oh, your identity is pretty important to culpability. And I think it's – I don't know that the court needs to go that far in this case, but I do think it falls in this category when you're talking about the property that we know is associated with this defendant. What's the deal with that? Asking him, hey, were you driving that illegally or is there any contraband in there, that might be a little bit further, but all the testimony established is he asked them basically about this car that they saw in plain view. And I do think it's fair to say that falls within the ministerial exception essentially, and I don't know if it's characterized as an exception, but the ministerial questions doctrine of Miranda. That said, for so many reasons, I don't think the court needs to go that far. The other issues we have is the final category, I suppose. There are two other things. Sorry to get ahead of myself, trip over my own tongue, but Detective Barsh testified without contradiction that the officers at Enterprise informed her there was a gun or the employees at Enterprise informed her there was a gun before there was any search. That establishes probable cause. Probably causably there's evidence of a crime in that car, and that alone, independent of – But isn't there contrary evidence to that? I mean they're like a little bit of a mess on whether they found the gun first or whether the officers found the gun. I mean it seemed like there was a little bit of confusion about that, and for us to – we could affirm on anything clear in the record, but that doesn't seem so clear. Your Honor, certainly the defense made a lot of – included a lot of rhetoric in his submission about that, but I think if you read Detective Barsh's testimony, it really is uncontradicted. Nobody testified that anybody searched this car before the officers were informed there was a gun. Detective McKinney didn't hear the conversation with Detective Barsh, but both of them explained he was on the phone. It's not like he should have heard that or there was any contradiction there, but I agree, Your Honor. Certainly the court doesn't have to affirm on that ground. There are plenty of other grounds, including one which this court heard not only uncontradicted – or the court heard not only uncontradicted but undisputed testimony, which is the police would have inevitably discovered the gun through lawful means in any event. Both Ziteroff and Crist both testified, here's our standard procedure. We tow it back to this lot. We look at everything that's in there in case there's property that's left behind, and if we see a gun, we secure it and call the police. Is there a case – I mean, I understand the logic of it, but do you have a case where we've applied inevitable discovery based on the policy and procedure of a private actor? I mean, we tend to think about inevitable discovery as you've got it in the impound, and we search every car, and so that's the inevitable discovery doctrine. Have we extended it to a private actor's policy? This court, as far as I know – I don't know of a case from this court. I know of the Kennedy case from the Sixth Circuit. I know of another decision that I'm blanking on from another circuit, but I don't know of one in this decision. But what this court has basically said is it's relatively simple. Can you – we have the burden. Can we establish that we lawfully could have obtained the evidence but for the allegedly illegal behavior? And two, would we have? Would that inevitably have happened? And does that – that depends on you prevailing, though, on the sort of your opponent's claim that you misled Enterprise, right? And so if you – I'm just – I don't understand the framework. If you had misled Enterprise, I'm not alleging that you have, but if you had, then inevitable discovery wouldn't save you because Enterprise would not necessarily have towed the car. Maybe the renter would have come and picked it up. I disagree with that, even accepting the premise, which I definitely don't agree with. I understand. Accepting the premise that there was some – that we misled Enterprise because misleading Enterprise isn't a violation of the Fourth Amendment and certainly not a violation of Daniels' Fourth Amendment rights. So you can't say that what Enterprise did was the fruit of the poisonous tree grown from a Fourth Amendment violation. If you believe that calling – if this court concludes that stating to Ms. Zitteroth that he was in possession of the car and now it's sitting at the Baymont Suites because we know he communicated that to her is somehow deceptive, it's kind of a red herring because that doesn't make the conduct the product of unlawful behavior or anything unconstitutional. Maybe the police shouldn't have used that word. I think that's probably not correct. But I think it was perfectly acceptable for the court to use that word, but that doesn't make the inevitable discovery doctrine inapplicable. The inevitable discovery doctrine asks what would have happened but for the Fourth Amendment violation. And the only Fourth Amendment action, the only action regulated by the Fourth Amendment in this case, was Detective McKinney's lifting of the front floorboard or the floor mat. That's the search. That's the only thing that is alleged to qualify as a search or seizure in this scenario. And if that hadn't happened, we have the testimony that the defense attorney described as – I'm not contesting. I'm sorry. The defense attorney described as believable from Ms. Zitteroth and Crist that they would have found the gun and secured it anyway through their ordinary procedures. If this court has no further questions, I'm happy to answer them. But if not, I'll yield the balance of my time back to the court. Thank you, counsel. Mr. Carpenter, we're happy to hear from you for a little bit. Thank you. So I'd like to start with a quick point about Burrell and then maybe transition to the deception point. I think that looking back at the case again, the key reason we shouldn't rely on Burrell to establish the travel right – or excuse me, the trial right as the rule is because if you look at the flow of the analysis, Judge – I think it was Ludwig – walks through under Chavez, there's the plurality reasoning, and then there's the pseudobriar reasoning. And then in the application paragraph, he goes on to say, well, he doesn't allege a trial right, so he loses under the plurality reasoning. But then the next sentence goes on to say, and he also loses under the pseudobriar reasoning. So I think this is very clearly an alternative holding that whichever of these two tests is the right test, this particular defendant loses. So I think referring to the trial right in that context, in the context of under either of these tests, he loses. The alternative holding where they're both necessary doesn't render one of them dicta, does it? No, but it doesn't render the decision to be deciding which of the rules is the applicable rule going forward. It abstains from that. It says whichever of these two rules controls, this particular defendant loses. That type of reasoning leaves for another day the decision of which of those two rules controls in a case where it matters. So I don't think that anything in Burrell can be read as weighing on either side of that. I would also add, which is this is somewhat adjacent to Burrell, but the trial right only line of reasoning has a huge textual problem. Because if you look at the Fifth Amendment, it doesn't refer to a criminal trial. It refers more broadly to a criminal case. And a suppression hearing is simply a piece and a critical piece of a criminal case. Otherwise, if we had structured criminal trials in this country differently, you could imagine the trial starts and then you have a sidebar at which you decide these types of suppression issues. And then it would be all part of the criminal trial. But we think it more logical to do it in front under the criminal rules of procedure. We do it first so that we decide the evidentiary issues up front, and then we go to trial. I just don't think that the trial right only logic makes sense under the Sixth Amendment. And I don't think it's – or excuse me, under the Fifth Amendment. And it's not required under this court's precedent. I transition just for a few minutes to the deception point. Judge Richardson, in particular, your question about, well, if he alleges that he had a possessory interest based on the permission, does that also mean that what they said wasn't false or deceptive? And the point – I think I have two points there. One is our view is that simply it is false to say that he had constructive possession when he lacked the keys. So we think the absence of keys is dispositive on the constructive possession question. But more broadly than that, I think that the focus on constructive – on the falsity of that statement, which is certainly what the district court focused on in its ruling entirely, is a little bit of the wrong inquiry. Because a statement can be technically false but still be highly misleading. So, for example, if I had walked in here today coughing and said, don't worry, I tested negative for the Delta variant, that might be true. But if I had also tested positive for the Omicron variant, my statement would be very misleading to the court. And I think that's what we have that happened here. Even if what Detective Kipp conveyed to Ms. Zitterauf was technically true. Respond to your colleague's point that even if it's misleading, that's not a Fourth Amendment violation. So I think it is. And the rule I would point to – the case I would point to is the Pagan-Gonzalez case from the First Circuit, which walks through a bunch of Supreme Court and other precedent that establishes the principle that if officers, when acting in their official capacities, not undercover, but when in their official capacities they use deception to secure consent for a search that would otherwise be unlawful, that consent is invalid. And that's exactly what we – that's exactly what we have here. The officers used deception. They omitted critical information, and they created a very apparent misunderstanding about the true nature of the situation. And by doing that, they induced Enterprise to repossess this car and ultimately consent to a search. And so, again, the things they did, they omitted the two key facts here, that he was not arrested in or near the vehicle. He was instead arrested inside of a hotel room. And secondly, that he did not have the keys to the car. So those were omitted. More correctly, they didn't find the keys to the car. Correct. The only fact that we know is that they didn't find the keys to the car. Correct. They were not in his person, nor were they in his hotel room. They found. Or they now found. So I suppose the officers did a poor search. But in any event, more importantly, if you look at Joint Appendix Page 227, and my colleague quoted this language, but I think he overlooks its real central point, which is Ms. Ziteroff understood what was conveyed to her to mean, quote, that he was driving the vehicle. And the present tense there is critical. She understood that he was driving the vehicle. Not that he had driven it at some point in the past and then went to bed and slept in his hotel room until he was arrested. She understood that he was driving. That triggered the enterprise policy that when someone is driving our car and is arrested and the car would otherwise be left abandoned, we tow it. And if the police want to search it, that's fine. If they had given her full information, it would not have triggered their policy. There is no evidence in the record that if they had known the full facts, that the authorized renter of this car is out there somewhere, presumably has the keys, that they would have repossessed the vehicle. Instead, we can assume they would have called the authorized renter and said, hey, there's a situation with our car. Do you still have the keys? Are you planning to return it? What's going on? That's why the government can't meet its burden under inevitable discovery, because without the misleading conduct here, there's no evidentiary basis to believe that the car would have been repossessed when it was and ultimately consented to the search. Thank you, Mr. Carpenter. Can I ask one quick question? Mr. Carpenter, I'm looking at the findings of fact that the trial judge made in ruling on this, the validity of this search, and his findings is that Mr. McKinney's provision of information to Enterprise was not false. Now, what does that do to your argument then? So I think it does two things, Judge. The first is it subjects us to the clear error standard of review for that particular finding. You know, again, that's where our position is that the absence of the keys renders that finding clearly erroneous. But the other thing it does is that the judge's findings of fact simply do not address the broader question of deception, which can, as I pointed out, be separate and apart from simple falsity. Okay. Thank you. Thank you, Counsel. We obviously are not going to come down and greet you, but we certainly appreciate your argument today and help on this case.
judges: Julius N. Richardson, Allison J. Rushing, William B. Traxler Jr.